

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JUN 27 2007

BY _____ DEPUTY
Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

KENNETH and JUDITH DUTRUCH,

vs.                              CIVIL ACTION NO.: 1:07cv904 LG JMR

STATE FARM MUTUTAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE AND CASUALTY COMPANY                        Defendants

## COMPLAINT

Plaintiffs, Kenneth and Judith Dutruch, by and through their undersigned attorneys, hereby sue the defendants, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm Auto") and State Farm Fire and Casualty Company (hereinafter "State Farm Fire"), and allege the following:

### GENERAL ALLEGATIONS

#### Parties

1.     At all times material hereto, Kenneth and Judith Dutruch were and are citizens of the state of Louisiana who, at the time of Hurricane Katrina, owned property located at 3520 Luakini Place, Diamondhead, Hancock County, Mississippi, 39525.

2.     State Farm Auto is a foreign insurance company doing business within the state of Mississippi, with its corporate headquarters located at One State Farm Plaza, Bloomington, Illinois, 61710.

3.     At all times material to this complaint, State Farm Auto was authorized to and was conducting the business of insurance in Mississippi.

4.    State Farm Auto is the "parent" company to State Farm Fire and the sole owner of State Farm Fire.  Moreover, State Farm Auto provides various management and consulting services to State Farm Fire for which it is paid substantial fees.

5.    State Farm Fire is a foreign insurance company doing busies within the state of Mississippi, with its corporate headquarters located at One State Farm Plaza, Bloomington, Illinois, 61710.

6.    At all time material to this complaint, State Farm Fire was authorized to and was issuing homeowners insurance policies in the state of Mississippi.

**Jurisdiction and Venue**

7.    Jurisdiction is proper in this Court under 28 U.S.C. §1332(a) because a complete diversity exists among the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. The property insured by the State Farm Fire policy at issue is situated in this judicial district, and a substantial part of the events giving rise to the Plaintiffs' claims occurred in this district.  Venue is proper in this Court under 28 U.S.C. §1391.

**Facts**

8.    On August 29, 2005, when Hurricane Katrina devastated the Mississippi Gulf Coast, Plaintiffs owned property located at 3520 Luakini Place, Diamondhead, Hancock County, Mississippi, 39525.  In consideration of premiums paid, State Farm Fire issued to the Plaintiffs  a policy of homeowners insurance bearing policy number 24-CS-1219-2 (hereinafter the "Policy"), insuring the Plaintiffs' property, a copy of which is attached hereto as Exhibit "A."

9.     The Policy was in full force and effect when substantial damage occurred to the insured premises as a result of Hurricane Katrina and/or hurricane force winds from Hurricane Katrina on or about August 29, 2005.

10.     The State Farm Fire Policy is an "accidental direct physical loss" policy of insurance (also known as an "all risk" policy) drafted by State Farm Fire.  The "loss insured" under the State Farm Fire Policy is "accidental direct physical loss" to Plaintiffs' property at 3520 Luakini Place, Diamondhead, Hancock County, Mississippi, 39525, except as provided in the "Losses Not Insured" section of the Policy, where such "Losses Not Insured" apply to the coverage provision at hand.

11.     State Farm Fire knew that Plaintiffs, like many other residents on the Mississippi Gulf Coast, purchased a homeowners policy of insurance for protection from accidental direct physical loss including loss from hurricanes.

12.     The State Farm Fire Policy expressly states on its face:  "This is one of the broadest forms available today and provides you with outstanding value for your insurance dollar."

13.     The Policy contained a specific deductible provision that raised the deductible for hurricane-caused losses covered by the Policy.  The increased deductible, commonly called the "hurricane deductible," was requested and received by State Farm Fire from the Mississippi Department of Insurance.  Such increase was justified by State Farm Fire due to the hurricane risks associated with coastal properties.  State Farm Fire utilized hurricane-specific experience ratings and computer model projections of hurricane losses to corroborate its demand for such rate increases.

14.     Plaintiffs' contract of insurance with State Farm Fire provided coverage for the dwelling, for other structures known as "dwelling extension," for their personal property (contents), for loss of use of their insured property should it become uninhabitable, and for other coverages, including an increased dwelling amount, as shown in Exhibit "A."   The Policy also provided Additional Coverages, including but not limited to coverage for debris removal and for collapse.

15.     As a result of the devastation caused by Hurricane Katrina, Plaintiffs' insured home was completely destroyed, together with all contents or personal property situated herein, as well as all other structures located at or upon the insured property.

16.     The accidental direct physical loss sustained by Plaintiffs' dwelling was caused by wind, at least in part, and loss would have occurred in the absence of water. Such loss triggered all coverages under Plaintiffs' Policy with State Farm Fire in accordance with Mississippi law.

17.     Hurricane and/or windstorm damages and ensuring damages as a result thereof are covered by the Policy issued by State Farm Fire. Under the Policy, once the insureds demonstrate that a fortuitous loss occurred during the policy period, the burden is on the insurer to prove that any exclusion to coverage applied to preclude coverage for the loss.   Specifically, the Policy contains the following insuring provision for the dwelling:

## SECTION 1 – LOSSES INSURED

### COVERAGE A – DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION 1 – LOSSES NOT INSURED.**

**COVERAGE B – PERSONAL PROPERTY**

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I – LOSSES NOT INSURED:**

　　　　*　　　　*　　　　*

　　2.　　**Windstorm or hail.**  This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust.  This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

18.　　The policy also contains the following insuring provision:

**SECTION I – ADDITIONAL COVERAGES**

　　　　*　　　　*　　　　*

　　11.　　**Collapse.**  We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

　　　　Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

　　　　The collapse must be directly and immediately caused only by one or more of the following:

　　　　a.　　perils described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**  These perils apply to covered building and personal property for loss insured by this Additional Coverage;

**Fact  Specific to the Adjustment of Plaintiffs' Claim**

19.　　After their insured property sustained extensive damage and destruction as

a result of Hurricane Katrina, Plaintiffs properly and promptly submitted a claim to State

Farm Fire seeking to obtain benefits under the Policy, as was their right. State Farm Fire assigned claim number 24-Z498-139 to Plaintiffs' homeowners claim

      20.     Thereafter, plaintiff, Kenneth Dutruch, in a telephone conversation with the assigned State Farm Fire adjuster, Ross Bagby, attempted to schedule an appointment with Mr. Bagby at the insured residence, but the request was rejected by Mr. Bagby. Rather, Mr. Bagby claimed that he did not have to conduct an inspection "because all of them look the same." Plaintiff, Kenneth Dutruch, requested that should Mr. Bagby need to inspect the property, that Mr. Bagby promptly notify the Plaintiffs so that they could be present during such an inspection.

      21.     During the above-described telephone conversation, Mr. Bagby requested that the Plaintiffs submit to him a general list of contents and an estimated price of the contents by room. On October 10, 2005, plaintiffs complied with Mr. Bagby's request and forwarded a detailed list of contents and prices of the contents, along with photographs and the square footage of each room.

      22.     On October 25, 2005, Plaintiffs spoke with Mr. Bagby who, at that time, informed them that State Farm Fire had tendered limits for their flood claim, which arose from a separate policy issued to them by State Farm Fire, on October 24, 2005, but that their homeowners claim was being denied.  State Farm Fire was ultimately reimbursed by the U.S. Treasury for the proceeds paid under the flood policy.

      23.     On October 27, 2005, Plaintiffs received a letter form Kirk Angelle, Team Manager, which denied Plaintiffs' homeowners claims.  Plaintiffs have attached hereto the October 27, 2005, denial letter as Exhibit "B."

24.     Rather than accepting its responsibility to provide coverage for the loss, State Farm Fire denied all benefits due and owing to the Plaintiffs under the Policy. Specifically included was coverage for losses to their dwelling (Coverage A), losses to their personal property (Coverage B), losses to extended dwelling, increased dwelling coverage, and ordinance/law coverage, together with loss of use damage and losses which will proved at trial as they are continuing, by claiming the loss was excluded from coverage pursuant to the following exclusionary clause found in the Policy:

### SECTION I – LOSSES NOT INSURED

***

2.      We do not insure any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the even occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

***

c.      **Water Damage**, meaning:

(1)     flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all       whether driven by wind or not;

(2)     water from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3)     water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

25.     In its denial letter, State Farm Fire stated, "…[B]ased upon the results of our discussions, site inspection, and investigation, it was determined the *damage to your home was caused by flood waters*." [Emphasis added].  State Farm Fire refused to pay for any of the destruction of the insured home or property located at 3520 Luakini Place, Diamondhead, Hancock County, Mississippi, 39525, under the homeowners Policy.

26.     Although State Farm Fire's denial letter states that results from a "site inspection" formed the basis for a complete denial of Plaintiffs' homeowners claim and that such an inspection occurred on October 8, 2005, Plaintiffs are unaware that such an inspection ever took place.  In fact, Plaintiffs, during their initial telephone call with Mr. Bagby, specifically requested that they be notified and present should a site inspection be necessary.   State Farm Fire never notified the Plaintiffs of a date for a "site inspection."

27.     As a result of State Farm Fire's action in the handling of Plaintiffs' homeowners claims, Plaintiffs were forced to begin the burden of fighting for the benefits of their homeowners claim.  In January 2006, Plaintiffs  wrote a letter to State Farm Fire and requested State Farm Fire to provide them with reports indicating that the damage sustained to their home was from water and not from wind.   Plaintiffs have attached hereto a copy of said letter as Exhibit "C."

28.     Plaintiffs received a letter dated February 16, 2006, from Christie M. Greer, Team Manager, who stated that, "The information you requested in paragraph 1 is **work product** of State Farm, so we will be unable to furnish the requested information."

Ms. Greer further stated that, "…[T]here is not discernable wind damage to your home. We have determined that the damages to your home were caused by flood and tidal waters."   Ms. Greer further stated that State Farm Fire was, again, denying Plaintiffs' homeowners claims and relying upon the policy provision previously stated in Exhibit "D."

29.    Plaintiffs purchased the Policy from State Farm Fire as a way to insure against property damage that could potential result from hurricanes impacting the Mississippi Gulf Coast, including any and all damage proximately, efficiently, and otherwise caused by hurricane-force wind, rain and water.

30.    When selling the Policy to the Plaintiffs, and subsequently collecting premiums under the Policy, State Farm Fire expressly and/or implicitly represented to its insureds that they would have full and comprehensive coverage for any and all hurricane damage, including any and all damage proximately, efficiently and typically caused by hurricane winds, rain and water.

31.    Because of the representations of coverage made by State Farm Fire, as well as State Farm Fire's expressed and implicit promises, Plaintiffs were left with the belief and reasonable expectation that the Policy would provide full and comprehensive coverage for all hurricane-related damage sustained at and to the insured residence.

32.    State Farm Fire intentionally led the Plaintiffs to believe, during the time their homeowners claim was being adjusted, that it was acting in accordance with its obligation to conduct a good faith investigation before finally determining its liability to the Plaintiffs under the Policy of insurance.   Unbeknownst to the Plaintiffs, and concealed from the Plaintiffs and other State Farm Fire insureds, during the period

beginning August 29, 2005, State Farm Fire and State Farm Auto embarked on a calculated course of corporate conduct designed to wrongfully deny Plaintiffs' claim and the claims of other Mississippi Gulf Coast homeowners whose State Farm-insured homes, like that of the Plaintiffs, had been destroyed down to the slab or foundation as a result of Hurricane Katrina.

33.     Following Plaintiffs' Hurricane Katrina loss, State Farm Fire took the position that the Policy does not cover any of Plaintiffs' hurricane-related damage, based on the theory that damage caused by flood, surface water, and waves are specifically excluded from coverage, whether driven by wind or not, thus, refusing to provide any benefits under the Policy.

34.     Mississippi's insurance law in existence mandates full insurance coverage if the covered event, in this case hurricane wind and water, was the efficient proximate cause of the loss.  Nevertheless, State Farm Fire and State Farm Auto assert entitlement to raise the exclusionary clause at issue based on the theory that the lead-in clause to the exclusion provided an "anti-concurrent causation" exception to this Rule with the following language:

> We do not insure under any coverage for any loss which would have occurred in the absence of one or more of the following excluding events.

35.     However, the language relied upon by Defendants does not operated to contact around Mississippi's efficient proximate cause rule.  Thus, in the instant case, the risk insured against, the winds of a hurricane, set in motion the historic storm surge that hit the Mississippi Gulf Coast on August 29, 2005.  In an unbroken sequence between the insured risk and the ultimate loss to the Plaintiffs, the winds of Hurricane Katrina were

the efficient proximate cause of the loss. Thus, under the State Farm Fire Policy and Mississippi law, Defendants are liable for the entire loss suffered by the Plaintiffs, even if water damage had some involvement in the damage to the insured property.

36.     Additionally, the Policy at issue insures for all risks of accidental direct physical loss unless specifically excluded by the terms of the contract. In such policies, an insured such as the Plaintiffs only have the burden of showing the existence of a fortuitous loss, at which time the burden of proof shifts to the insurer, State Farm Fire, to establish the applicability of any exclusion under the facts of the case and the terms of the Policy.

37.     Furthermore, after assessing the magnitude of the State Farm-issued Katrina losses, the Defendants intentionally and deliberately set forth on a course of action, concealed the from the Plaintiffs and other homeowners, designed to reduce State Farm Fire's exposure for losses by abandoning its duty to investigate individual Katrina "slab cases," and by issuing across the board denials.

38.     State Farm Auto drafted, and State Farm Fire, pursuant to State Farm Auto's instructions, adopted new claims handling procedures after Hurricane Katrina to be "used for determination of coverage" in Mississippi Katrina claims where damage was sustained by a combination of wind and water.

39.     The coverage provisions of the new Wind/Water procedure written by State Farm Auto and implemented by State Farm Fire were not supported by the terms of the State Farm Fire contract or Mississippi law, but, in fact, was contrary to said terms. The procedures were intentionally designed to result in denials of legitimate claims, including the claims of the Plaintiffs, and to save Defendants from the magnitude of

payments that were rightfully due to Plaintiffs and other under State Farm-issued policies.

40.     The actions of State Farm Auto and State Farm Fire, concealed from State Farm Fire policyholders and from the Mississippi Department of Insurance, were designed to, and did, shift the burden of establishing the cause of the accidental direct physical loss in "slab cases" under the State Farm-issued all risk policy from State Farm to the policyholder.

41.     State Farm Auto and State Farm Fire initially told their field adjusters to adjust and pay all flood claims, but to tell policyholders of "slab" claims that a decision on the all-risk policy would be forthcoming after further investigation.

42.     In accordance with a top-down policy, adopted by the Defendants after post-Katrina deliberation and calculation, fraudulently concealed from the Plaintiffs and other insured State Farm-insured homeowners, that State Farm Fire canceled its adjusters' requests for engineering reports in "slab cases," and issued across the board denials of coverage to those whose homes were completely destroyed by Hurricane Katrina.

43.     Defendants' action resulted in an intentional and deliberate abandonment of the duty to investigate the claims of State Farm-insured Katrina "slab cases."

44.     The action of Defendants with regard to investigation of the cause of the loss incurred by Plaintiffs was intentional, deliberate conduct accompanied by fraud or deceit as alleged specifically herein.

45.     The action of Defendants, upon information and belief, was motivated, in part, of Defendants' desire to (1) save money on slab claims in violation of their duties to

the Plaintiffs and other State Farm policyholders; and (2) shift liability for a larger portion of the enormous Hurricane Katrina losses from State Farm homeowner policies to flood policies.

46.     On March 31, 2006, State Farm Fire responded in writing to a March 24, 2006,  demand from the Mississippi Insurance Department for a "detailed written explanations concerning State Farm's interpretation and application of the concurrent causation policy provision as same is being applied to Hurricane Katrina victims, particularly those with slab claims," State Farm Fire failed to disclose that the written Wind/Water coverage procedure written by State Farm Auto, and adopted by State Farm Fire just thirteen days after Hurricane Katrina, provided, in part: "Where wind acts concurrently with flooding to cause damage to the insured property, coverage for the loss exists only under flood coverage, if available."

47.     Pursuant to the terms of the State Farm Policy and Mississippi law, under Dwelling coverage, State Farm Fire was obligated to pay for Plaintiffs' entire accidentally direct physical loss except for "such loss" as State Farm Fire could prove "would not have occurred in the absence of water." As to danger which would have, and did, occur prior to the arrival of the water, State Farm Fire can not meet its burden.  The denial by State Farm Fire evidence by Exhibit "B," and the Defendants' Katrina "Wind/Water Protocol" is contrary to the terms of its insurance contract and Mississippi law.

48.     State Farm Fire had the opportunity to prove what part of the loss, if any, would have not occurred in the absence of water, but chose not to do so, opting instead to

adopt a course of conduct which was designed to wrongfully benefit the company at the expense of its policyholders and others.

49.    In this case, there is no question that Plaintiffs have established a loss that is covered by the general insuring language of the Policy.  Thus, State Farm Fire has the burden to prove that the loss would not have occurred in the absence of the excluded event.  State Farm Fire does not and will not meet this burden of proof.

50.    Moreover, pursuant to the Policy's additional coverage for "collapse", State Farm cannot rely at all on its "water damage" language, as that portion of the policy does not apply to this additional coverages section of the Policy.

51.    An insurance contract is a contract of adhesion, and should be construed in the light most favorable to the insured.

52.    The concept of insurance is that insurance is the insurer's granting of prompt indemnity or security against a contingent loss.

53.    Inherent in any insurance contract is the premise that payment must be made promptly, so that the insured may  mitigate his or her damages and be put back into the position he or she was prior to the loss, and as quickly as possible.

54.    A special relationship exists between an insurer and its insured, and is commonly described as one of the utmost of good faith and fair dealing.

55.    In Mississippi, the work of adjusting insurance claims engages the public trust.

56.    Plaintiffs have complied with all conditions precedent to obtaining payment of benefits under the Policy from State Farm Fire, and State Farm Fire has waived and/or is estopped from raising such conditions precedent.

## COUNT I - DECLARATORY JUDGMENT

57.     Plaintiffs re-allege paragraphs 1 through 56 as if fully set forth herein.

58.     This is an action for declaratory judgment pursuant to Fed. R. Civ. P. 57.

60.     This action for declaratory judgment has been filed for the purpose of determining an actual controversy between the Plaintiffs, Kenneth and Judith Dutruch, and the Defendants, State Farm Fire and State Farm Auto.

61.     On the occasion of Hurricane Katrina, Plaintiffs' insured property sustained extensive damage and loss, resulting in the total devastation of their home. However, State Farm Fire and State Farm Auto's position has been that they owe no obligation to provide any benefits to Plaintiffs for their loss and damage, relying on the exclusions to coverage contained within **SECTION I - LOSSES NOT INSURED**, paragraph 2(c).

62.     State Farm Fire and State Farm Auto's position is that lead-in sentence to paragraph 2 of **SECTION I - LOSSES NOT INSURED** is an "anti-concurrent causation" clause, such that all coverage is precluded for Plaintiffs' loss if any "Water Damage" occurred in combination with wind and/or rain damage to cause the loss to the insured premises.

63.     Plaintiffs' position is that there has been a breach of policy obligations, and that Plaintiffs are owed coverage for their damage sustained due to Hurricane Katrina at the insured property.

64.     Plaintiffs' position is that the exclusionary clause relied upon by State Farm Fire and State Farm Auto does not operate as an "anti-concurrent causation" clause sufficient to contract around Mississippi's efficient proximate cause doctrine as relating

to insurance policy interpretation, so that the damage is covered by the Dwelling portion of the Policy, since the winds of Hurricane Katrina were the efficient proximate cause of the damage to the insured property.

65.     Plaintiffs' position is that under the terms of the State Farm Fire Policy, all risks of accidental direct physical loss to the insured property are covered unless specifically excluded by the terms of the Policy.

66.     Plaintiffs' position is that the lead-in sentence relied upon by State Farm Fire as being an "anti-concurrent causation" clause only applies to any damage which "would not have occurred in the absence of the excluded event."

67.     Plaintiffs' position is that, in order to deny coverage for their Hurricane Katrina claim under the pertinent Policy exclusion at issue, State Farm Fire has the burden to prove that the loss would not have occurred in the absence of the excluded event.

68.     Plaintiffs' position is that State Farm Fire and State Farm Auto have not met the burden of proof, and the loss and damage is covered under the Policy.

69.     Plaintiffs' position is that, pursuant to the Policy's additional coverage for "collapse", State Farm cannot rely at all on its "water damage" language, as that portion of the policy does not apply to this Additional Coverages section of the Policy.   Thus, notwithstanding State Farm's position concerning the anti-concurrent causation clause, the entirety of the loss is owed up to the Policy's limits.

70.     As a result of the facts set forth herein, the parties are uncertain to their rights and obligations under the policy, and there exists a present, ascertainable set of

facts concerning the rights and obligations of both the Plaintiffs and State Farm Fire under the Policy.

71.    The rights and obligations of both the Plaintiffs and State Farm Fire under the Policy are dependent upon the facts and law applicable to the facts affecting coverages under the Policy.

WHEREFORE, the Plaintiffs, Kenneth and Judith Dutruch, respectfully seek a declaration from this Court that:

(a)    State Farm Fire has breached its Policy obligations to its insureds, Kenneth and Judith Dutruch, and State Farm Fire owes coverage for the damage sustained to their property due to Hurricane Katrina;

(b)    The exclusionary clause relied upon by State Farm Fire and State Farm Auto does not operate as an "anti-concurrent causation" clause sufficient to contract around Mississippi's efficient proximate cause doctrine as relating to insurance policy interpretation, so that the damage is covered by the Policy, since the winds of Hurricane Katrina were the efficient proximate cause of the damage to the insured property;

(c)    Under the Dwelling coverage of the Policy, the State Farm Fire Policy covers all risks of accidental direct physical loss to the insured property unless specifically excluded by the terms of the Policy;

(d)    The lead-in sentence relied upon by State Farm Fire as being an "anti-concurrent causation" clause only applies to any damage which would not have occurred in the absence of the excluded event;

(e)     In order to deny coverage for Plaintiffs' Hurricane Katrina claim under the pertinent Policy exclusion at issue, State Farm Fire has the burden to prove that the loss would not have occurred in the absence of the excluded event;

(f)     State Farm Fire has not met its burden of proof, and the loss and damage is covered under the Policy;

(g)     pursuant to the Policy's additional coverage for "collapse", State Farm cannot rely at all on its "water damage" language, as that portion of the policy does not apply to this additional coverages section of the Policy; and

(g)     Plaintiffs are entitled to an award of damages for the full value of all coverages available under the Policy, and such other and further relief as this Court may deem just and proper, and Plaintiffs are entitled to receive a trial by jury on all issues so triable.

## COUNT II - BREACH OF CONTRACT

72.     Plaintiffs re-allege paragraphs 1 through 71 as if fully set forth herein.

73.     State Farm Fire owed a duty to its policyholders, Kenneth and Judith Dutruch, to make prompt and proper payment for their Hurricane Katrina claim, and to make available the Policy limits to compensate its insureds for their loss.  These duties arise from the language of the Policy itself, from Mississippi statutory laws and rules, and from the duties implied in every insurance contract in the State of Mississippi.

74.     State Farm Fire has breached these duties and obligations as recited above, by failing to make available any sums to indemnify its insured, and by relying upon a Policy exclusion to deny coverage which is, and should be, inapplicable under the circumstances of this claim.

75.    State Farm Fire has breached the Policy by failing to pay all benefits available and owed under the Policy, by utilizing an inappropriate interpretation of the Policy so as to attempt to avoid its obligations imposed by the Policy and by Mississippi law.

76.    As a result of these breaches, Plaintiffs have been damaged in an amount equal to all coverage limits available to them under the Policy, they have not been made whole, and they have been unable to make repairs necessary to return the property to its pre-loss condition.

77.    As a direct result of State Farm Fire's  breaches of its insurance contract, Plaintiffs have lost the benefit of the use of their  insured home (they continue to suffer this loss) and they have sustained substantial unindemnified damages which equal to the full limits of all coverages reflected in the Policy.

WHEREFORE, the Plaintiffs, Kenneth and Judith Dutruch, pray this Court enter an award of compensatory damages, interest, the costs of this action, and such other and further relief as this Court may deem just and proper.  Further, Plaintiffs request a trial by jury on all issues so triable.

## COUNT III - POLICY REFORMATION

78.    Plaintiffs re-allege paragraphs 1 through 77 as if fully set forth herein.

79.    This is an action for reformation of the State Farm-issued Policy issued to the Plaintiffs, Kenneth and Judith Dutruch, when insuring the property that is the subject of this litigation.

80.    Plaintiffs' position in this matter is that the policy does and should provide coverage for their Hurricane Katrina damage, as the efficient proximate cause of that damage was windstorm and wind-related.

81.    However, should this Court determine that coverage is precluded for this loss by the tortured language of the policy, even though the efficient proximate cause was windstorm, since the ultimate result was some damage due to an alleged excluded event, tidal storm surge, then Plaintiffs seek a reformation of the contract of insurance.

82.    The intent of the Plaintiffs when they entered into this contract was to obtain the best and most comprehensive coverage available, including obtaining coverage for the express situation that occurred when their home sustained substantial and devastating Hurricane Katrina-related damage due to wind and water, where the efficient proximate cause of the loss was the windstorm.  Plaintiffs reasonably believed that they were obtaining coverage for this type of an occurrence when they purchased the Policy from insurance agent Mike Meyers, and Plaintiffs clearly indicated their intent and beliefs to State Farm Fire's agent, Mike Meyers.

83.    If there is no coverage for their loss, then the lack of coverage is due to unilateral and/or for mutual mistake on the part of the insureds, Kenneth and Judith Dutruch, and the insurer State Farm Fire (acting by and through its agent, Mike Meyers) along with inequitable and improper conduct by the insurer, State Farm Fire, acting by and through its agents and employees, who allowed this mistake to exist and manifest itself at the time Hurricane Katrina struck the Mississippi Gulf Coast when Plaintiffs needed the most "broad" and "comprehensive" coverage promised by State Farm fire and its agent.  Particularly, this reasonable mistake on the part of the Plaintiffs, as well as the

inequitable and improper conduct of State Farm Fire, is evidenced, in part, by the statement contained on the face of the homeowners coverage form wherein it states: "This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars."

84.     In fact, State Farm Fire used its superior bargaining position and power over its insured so as to mislead and induce its insureds, Kenneth and Judith Dutruch, into believing that they would receive coverage for the exact circumstances which occurred in this case.  Then, once the insureds, Kenneth and Judith Dutruch, were at their most vulnerable, State Farm Fire refused to provide coverage for any of the damage to the insured property, relying upon the particular exclusionary clause discussed above, which had never before been explained to Plaintiffs or even brought to their attention.

85.     Ultimately, should this Court find that there is no coverage under the Policy for Plaintiffs' Hurricane Katrina loss, the Policy should be reformed to reflect the intent and mutual and/or unilateral mistake of the Plaintiffs and State Farm Fire's agent, Mike Meyers, in conjunction with the inequitable conduct of State Farm Fire, and this Court should require the Policy to provide coverage for all damages and losses sustained by the Plaintiffs to the full extent of the limits of coverage afforded by the Policy.

WHEREFORE, Plaintiffs, Kenneth and Judith Dutruch, request that the Policy be reformed to comport with the intent that coverage be afforded to the Plaintiffs for their Hurricane Katrina loss, as was their understanding, intent and belief at the time the contract was formed.  Plaintiffs further requests that this Court award any and all other relief including costs, and other damages such as monetary damages for the policy benefits available, and such other and further relief as this Court deems just and

appropriate, including equitable reformation.  Plaintiffs request a trial by jury on all issues so triable.

## COUNT IV - PROMISSORY ESTOPPEL

86.     Plaintiffs re-allege paragraphs 1 through 85 as if fully set forth herein.

87.     This Count is being brought as an additional and alternative theory regarding the amount of money/policy benefits owed to Plaintiffs from State Farm Fire as a result of their Hurricane Katrina loss.

88.     Prior to the issuance of the State Farm Fire Policy, Plaintiffs sought, and were promised, the most extensive and best coverage they could obtain for any damages arising as a result of a hurricane loss and to protect their covered property located in Diamondhead, Mississippi, which is an area potentially vulnerable to hurricane damage. In seeking such coverage, Plaintiffs specifically requested a homeowners policy that would provide comprehensive coverage for the insureds" property for all damages it sustained where the efficient proximate cause of the loss was a hurricane.  Plaintiffs sought, and were promised by State Farm Fire's agent, Mike Meyers, that they were obtaining such coverage, so they did not seek to insure against this type of loss with additional and more comprehensive coverage elsewhere, which Plaintiffs allege they most certainly would have done to protect against losses to their home and personal property.

89.     During the course of Hurricane Katrina, Plaintiffs' insured property sustained substantial damage resulting in a complete and total destruction of the insured property.  However, State Farm Fire completely denied any coverage for the loss,

alleging that the Policy does not cover the damage, due to the fact that the ultimate result of the hurricane was flood water/storm surge event and not an "insured event."

90.   Plaintiffs reasonably relied upon the representations and conduct of State Farm Fire's agent and representative to their detriment, since State Farm Fire has now disavowed any coverage for the loss, in spite of its original promises of full, complete, and comprehensive coverage.  Plaintiffs are now faced with the possibility of not being able to recover any homeowners insurance policy benefits should State Farm Fire prevail on its position regarding coverage.  If the Plaintiffs had not relied upon State Farm Fire promises, they could have and would have sought additional and alternative coverage elsewhere to have accounted for this lack of comprehensive coverage in the Policy issued by State Farm Fire.  Plaintiffs changed their position in reliance on State Farm Fire promises, to their detriment, and as a result they have sustained damages equivalent to the insurance they would have collected under other "comprehensive" and "broad" insurance policies that were readily available to them in the market place.

91.   As a result, State Farm Fire should not be allowed to rely upon its improper, inequitable and inappropriate conduct, and Plaintiffs should be awarded a grant of coverage for all of their losses detailed previously, based upon his detrimental reliance on State Farm Fire's false and misleading assurance of "broad"  and "comprehensive" coverage.

WHEREFORE, Plaintiffs, Kenneth and Judith Dutruch, request  that this Court enter an award of compensatory damages for all losses to real and personal property and for additional living expenses incurred, prejudgment interest, costs of this action, and

such other and further relief as this Court deems just and appropriate.  Further, Plaintiffs request a trial by jury on all issues so triable.

### COUNT V- AGENT NEGLIGENCE

92.     Plaintiffs re-allege paragraphs 1 through 91 as if fully set forth herein.

93.     Plaintiffs allege that State Farm Fire, through its captive insurance agent, owed a duty of care to procure full and comprehensive coverage for all hurricane-related damage at their home. Plaintiffs allege that at all times pertinent, State Farm Fire was and is liable for the negligent acts of its captive agent, Mike Meyers, who sold and serviced Plaintiffs' homeowners policy under the doctrine of vicarious liability or respondent superior.  Moreover, State Farm Fire, acting by and through its agent, Mike Meyers, had a duty to advise Plaintiffs of its restrictive interpretation and application of its own policy language as it relates to storm surge damage and concurrent causation and that under its interpretation of the policy language, if the Plaintiffs sustained any amount of storm surge damage, however minor, during a hurricane, their wind coverage under their homeowners policy would be rendered null and void.

94.     Plaintiffs further allege that at no time did State Farm Fire's agent, Mike Meyers, warn or notify them of his failure to procure "broad" and "comprehensive" coverage for all hurricane-related damage.

95.     Plaintiffs allege that State Farm Fire agent, Mike Meyers, failure to procure the "broad" and "comprehensive" insurance coverage they needed amounted to a breach of the duty of care owed to the Plaintiffs, and in the alternative, alleges that State Farm Fires failure to advise and warn them of the huge gaps in coverage for hurricane damage as a result of its tortured interpretation of its own policy form was, likewise, a

breach of the duty of care owed to Plaintiffs by State Farm Fire's agent who owe Plaintiffs the duty to obtain the "broadest" and most "comprehensive" homeowners insurance policy available in the market place or warn as to its significant and material gaps in averages.

96.    Plaintiffs further allege that the breach of the duty of care by State Farm Fire and its agent proximately caused damage and loss to the Plaintiffs equal to the total amount of any uninsured losses sustained to Plaintiffs' property as a result of Hurricane Katrina, for the reason that had the Plaintiffs been properly advised, counseled and warned, they would have selected an insurance product that withstood a hurricane storm surge.  Moreover, State Farm Fire's breach of its duties to the Plaintiffs amounted to willful and wanton, or gross negligence entitling them to recover punitive damages.

WHEREFORE, Plaintiffs, Kenneth and Judith Dutruch, request that this Court enter an award of compensatory and punitive damages, prejudgment interest, costs of this action, and such other and further relief as this Court deems just and appropriate. Further, Plaintiffs request a trial by jury on all issues so triable.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

97.    Plaintiffs reallege paragraphs 1 through nineteen 96 as if fully set forth herein.

98.    State Farm Fire and State Farm Auto's  knowing use of the above-described wrongful claim practices were done with the intent of inflicting severe emotional distress upon its own insureds, including the Plaintiffs, Kenneth and Judith Dutruch.

99.     State Farm Fire and State Farm Auto represented themselves at all times material to its insureds, Kenneth and Judith Dutruch, that they were an insurance company that would provide prompt, fair, and proper claim service to its claimants, including Plaintiffs, Kenneth and Judith Dutruch, once a claim for benefits was made.

100.     The representations of State Farm Fire and State Farm Auto of providing prompt and fair claims services were important to Plaintiffs, Kenneth and Judith Dutruch, when they selected State Farm Fire and State Farm Auto as their homeowners insurance carrier.

101.     State Farm Fire and State Farm Auto acted with actual malice and for the express purpose of reducing and/or denying payments for homeowner insurance claims fairly owed when designing, implementing, and carrying out its claims practices that at all material times were deployed in an effort to delay and avoid the proper payment of insurance benefits rightfully due to Plaintiffs, Kenneth and Judith Dutruch, and other State Farm-insured claimants.

102.     The express and deliberate betrayal of a representation of trust, care and protection to an insured by an insurance company licensed to do the business of insurance, which is vital nature to the public interest, is outrageous conduct in our society.

103.     By virtue of said outrageous conduct, Defendants, State Farm Fire and State Farm Auto, did knowingly and intentionally inflict emotional distress upon Plaintiffs, Kenneth and Judith Dutruch, that was the direct and natural cause of mental distress, pain, suffering and anxiety.

**WHEREFORE**, Plaintiffs, Kenneth and Judith Dutruch, pray for damages from Defendants, State Farm Fire and State Farm Auto, prejudgment interest, costs of this action, and such other and further relief as this Court deems just and appropriate. Further, Plaintiffs request a trial by jury on all issues so triable.

## COUNT VII - BAD FAITH

104.    Plaintiffs re-allege paragraphs 1 through 103 as if fully set forth herein.

105.    This is an action for insurer bad faith against State Farm Fire and State Farm Auto for breach of the covenant of good faith and fair dealing, seeking compensatory damages, punitive damages, and attorney's fees.

106.    This action arises from the Hurricane Katrina loss sustained by the insureds, Kenneth and Judith Dutruch, against their insurer, State Farm Fire and State Farm Auto, for egregious misconduct in adjusting and investigating the insureds' loss.

107.    Mississippi law requires a duly admitted insurance carrier, such as State Farm fire and State Farm Auto, to treat its insureds with honesty, fairness, and with due regard for the interests of the insured. The special relationship between an insurer and its insured requires the insurer to act toward the insured with the utmost of good faith and fair dealing when the insured is at his or her most vulnerable. State Farm Fire and State Farm Auto have breached these duties in the handling of the Plaintiffs' claim in order to ensure its own financial gain and profit.

108.    State Farm Fire and State Farm Auto are engaged in the business of insurance, and is subject to Mississippi statutes, Mississippi regulations, and Mississippi law while involved and engaged in the business of insurance. In the State of Mississippi, an insurance carrier owes the implied duty of good faith and fair dealing to treat its

27

insured fairly, reasonably, and honestly, and with due regard for the insured's interest. State Farm Fire and State Farm Auto are guilty of failing and/or refusing in good faith to settle the subject claim when, under all circumstances, it could and should have done so had it acted fairly and honestly toward its insureds.

109.   When State Farm Fire issued the Policy to the Plaintiffs, it promised to provide the best and most comprehensive coverage available, including coverage for any loss where the efficient proximate cause of the loss was a windstorm such as Hurricane Katrina. In spite of these promises, when faced with its insureds' devastating loss in the aftermath of Hurricane Katrina, State Farm Fire attempted to avoid its coverage obligations and instead adopted a position completely contrary to Mississippi law on the subject, and contrary to all promises and assurances previously given by the Plaintiffs' agent, Mike Meyers. State Farm Fire tortiously breached its claims handling duties by seeking any way to disavow coverage, especially when coverage was afforded by the Policy, and by Mississippi law.

110.   Moreover, as can be seen from the correspondence attached as Exhibit "B," State Farm Fire, at the direction of State Farm Auto, conducted a very cursory review of the insureds' property after the storm, and did not conduct a complete and proper evaluation of the damage or the cause of the damage. This is true despite the fact that State Farm Fire has routinely utilized engineers to evaluate similar losses (which Plaintiffs allege has been done for other homes in the vicinity of Plaintiffs' residence at State Farm's request), but did not utilize an engineer in Plaintiffs' claim.

111.   Significantly, the Mississippi Department of Insurance issued Bulletin 2005-6 on September 7, 2005, specifically addressing situations where little or nothing

remains of the insureds structure following Hurricane Katrina damage. The Bulletin specifically requires:

> In those situations, the insurance company must be able to clearly demonstrate the cause of the loss. I expect and believe that when there is any doubt, that doubt will be resolved in favor of finding coverage on behalf of the insured. In instances where the insurance company believes the damage was caused by water, I expect the insurance company to be able to prove to this office and insured that the damage was caused by water and not by wind.

A copy of this Bulletin is attached hereto as Exhibit "E." This Bulletin, authored by the Commissioner of Insurance, George Dale, was completely disregarded and ignored by State Farm Fire and State Farm Auto in the adjustment of the Plaintiffs' loss.

112. Rather than carrying out its contractual, statutory, regulatory and ethical duties, State Farm Fire committed acts during the adjustment of Plaintiffs' claim that were not in good faith, and were so egregious as to constitute intentional and willful conduct, or gross negligence or reckless disregard for the rights of its insured, and these actions were directed and overseen by Defendant, State Farm Auto.

113. Upon information and belief, State Farm Fire implemented claims programs for the adjustment of Hurricane Katrina claims that are/were secret and unknown practices that were designed to pressure its adjusters/investigators/employees to pay less than the fair value of the claim, to be free from regulatory and judicial review, and to create an unfair advantage over its competitors, and its insureds, which were directed and overseen by Defendant, State Farm Auto.

114. Upon information and belief, as a general business practice, State Farm Fire has adopted this practice throughout the state of Mississippi as a way to reduce its exposure in the face of catastrophic losses, even though the duty to accept coverage and

pay policy benefits must be afforded under the circumstances, which were directed and overseen by Defendant, State Farm Auto.

115.   State Farm Fire and State Farm Auto have pursued this course of conduct willfully and maliciously, or with gross negligence or in reckless disregard for the rights of its insureds, including the Plaintiffs. · State Farm Fire and State Farm Auto's motivation for attempting to disavow coverage arises from its attempts to preserve profits rather than any attempts to treat its insureds fairly and honestly.

116.   State Farm Fire and State Farm Auto intentionally and/or negligently inflicted emotional distress on the Plaintiffs.  State Farm Fire and State Farm Auto wrongfully denied insurance benefits to the Plaintiffs with the intention that its conduct would cause the Plaintiffs to suffer financial hardship and related stress.  State Farm Fire and State Farm Auto intended that the resulting emotional  distress and mental anguish would cause the Plaintiffs to settle their claim for less than they were due or to abandon their claim altogether.

117.   Upon information and belief, State Farm Fire and State Farm Auto have financially benefited from this unfair claims handling practice, and State Farm Fire and State Farm Auto should be forced to disgorge all unlawful or illegitimate profits and monies from such bad faith claims handling practices.

118.   As a direct result of State Farm Fire and State Farm Auto's aforementioned acts, omissions, and violations of the law, Plaintiffs, Kenneth and Judith Dutruch,  have suffered damages including severe emotional distress, incurred extra expense and time, pecuniary loss, professional fees, professional costs, litigation costs, and were required to hire the undersigned attorneys to represent them in this matter, and

the Plaintiffs are obligated for attorney's fees and costs in connection with the prosecution of this action. The Plaintiffs are entitled to recover these attorney's fees, as well as punitive damages in this case, for the maximum amounts provided for in Miss. Code Ann. 11-1-65, believed to be Twenty Million Dollars ($20,000,000.00), due to State Farm Fire and State Farm Auto's improper and grossly negligent conduct, and as a way to punish and deter State Farm Fire and State Farm Auto from engaging in this practice in the future.

WHEREFORE, Plaintiffs, Kenneth and Judith Dutruch, demand judgment against the Defendants, State Farm Fire and State Farm Auto, for actual and compensatory damages, interest, costs, attorney's fees, damages associated with the Plaintiffs' emotional distress and mental anguish, and punitive damages in such an amount as may be fixed and determined by a properly impaneled jury, and for such other and further relief as this Court deems just and appropriate. Plaintiffs further requests a trial by jury on all issues so triable.

Respectfully submitted this the ___27___ day of June, 2007.

William F. Merlin Jr., Esquire
MS Bar No.: 102309
Tina L. Nicholson, Esquire
MS Bar No.: 99643

MERLIN LAW GROUP
368 Courthouse Rd. - Ste. C (39507)
P.O. Box 4077
Gulfport, MS 39502
Tel: 228/604-1175
Fax: 228/604-1176
wmerlin@merlinlawgroup.com
tnicholson@merlinlawgroup.com